LOCKRIDGE GRINDAL NAUEN P.L.L.P.
REBECCA A. PETERSON (241858)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rapeterson@locklaw.com

[Additional Counsel on Signature Page]
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| **VALERIE WATSON,** individually and on behalf of a class of similarly situated individuals,<br><br>PLAINTIFF,<br><br>V.<br><br>**SOLID GOLD PET, LLC**<br><br>DEFENDANT.<br>. | Case No. 2:18-cv-6479<br><br>**CLASS ACTION COMPLAINT FOR:**<br>(1) VIOLATIONS OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT;<br>(2) VIOLATIONS OF THE CALIFORNIA FALSE ADVERTISING LAW;<br>(3) VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW;<br>(4) BREACH OF EXPRESS WARRANTY;<br>(5) BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY;<br>(6) FRAUDULENT MISREPRESENTATION;<br>(7) FRAUD BY OMISSION;<br>(8) NEGLIGENT MISREPRESENTATION;<br><br>DEMAND FOR JURY TRIAL |

1.    Plaintiff Valerie Watson, individually and on behalf of all others similarly situated, by and through her undersigned attorneys, brings this Class Action Complaint against Defendant Solid Gold Pet, LLC ("Defendant"), alleges the following based upon personal knowledge as to herself and her own actions, and, as to all other matters, respectfully alleges, upon information and belief, as follows (Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery):

## NATURE OF THE ACTION

2.    Defendant packages, labels, markets, advertises, formulates, manufactures, distributes, and sells pet food under the brand name Solid Gold throughout the United States, including California.

3.    Defendant's promises, warranties, statements, claims, packaging, labeling, marketing, and advertising ("Marketing") centers on representations that are intended to, and do, convey to consumers that its  products, including its Contaminated Cat Foods (defined herein), possess certain qualities and characteristics.   These representations include, among other things, claims that the Contaminated Cat Foods:

- Are holistic, made from "only the best quality ingredients," and "designed to support your pet's overall health and well-being;"

- Possess premium nutrition, high quality, and are safe for consumption;

- Offer nutrition that is "All that's good, nothing that's not;"

- Are made of ingredients that needed to "pass strict quality control measures" and "undergo multiple checkpoints against key health and safety criteria as they are brought into [Defendant's] U.S. manufacturing facilities;" and

- 1 -

- Offers pet parents "the opportunity to give their pets great nutrition just like they want to give to their child…"[1] (collectively, "Quality Claims").

The Quality Claims are repeatedly reinforced by representations plastered on product packaging, labeling, and various marketing and advertising mediums such as Defendant's website.

4.    As a result of Defendant's Quality Claims, consumers such as Plaintiff are lead to believe that Defendant's Contaminated Cat Foods are free from chemicals such as Bisphenol A ("BPA") and heavy metals like arsenic, mercury, lead, and cadmium (collectively, "Heavy Metals") – all  known to pose health risks to humans and animals.

5.    In actuality, Defendant's Contaminated Cat Foods contain levels of BPA and Heavy Metals that are material to reasonable consumers.

6.    Consumers such as Plaintiff were not aware that the Contaminated Cat Foods contained BPA and/or Heavy Metals.  Notably, the Contaminated Cat Foods Marketing does not disclose the presence of BPA and Heavy Metals anywhere.

7.    Defendant's engaged in deceptive, misleading, and false Marketing practices by expressly representing the Contaminated Cat Foods as possessing the Quality Claims despite the presence of BPA and Heavy Metals at levels that are material to reasonably consumers such as Plaintiff.

8.    By deceptively, misleadingly, and falsely Marketing the Contaminated Cat Foods with Quality Claims, Defendant wrongfully capitalized on, and reaped enormous

---

[1] https://www.solidgoldpet.com/interviews/

profits from, consumers who paid the purchase price or a premium for products that were not as advertised.

9.    Defendant's Quality Claims Marketing of the Contaminated Cat Foods is deceptive, misleading, unfair, and false to Plaintiff and other consumers under the consumer protection laws of California.

10.    Based on Defendant's supposed stringent quality control measures, it knew or should have known that the Contaminated Cat Foods contained BPA and Heavy Metals. As such, Defendant acted negligently, recklessly, and/or intentionally with its wrongful Quality Claims Marketing and failure to disclose the BPA and Heavy Metals contained in the Contaminated Cat Foods.

11.    Defendants' deceptive, misleading, unfair, and false Marketing has and continues to harm consumers by inducing them to purchase the Contaminated Cat Foods that are not as advertised.  Defendant has been unjustly enriched as a result of their wrongful conduct.  For these reasons, Plaintiff seeks the relief set forth herein.

12.    Additionally, Defendant knew or should have been aware that a consumer would be feeding the Contaminated Cat Foods multiple times each day to his or her cat, making it the main, if not only, source of food.  This leads to repeated exposure of the heavy metals and/or BPA to the cat.

13.    Defendant has wrongfully and misleadingly advertised and sold the Contaminated Cat Foods without any label or warning indicating to consumers that these products contain heavy metals, or that these toxins can accumulate over time in the cat's body to the point where poisoning, injury, and/or disease can occur.

14.     Plaintiff brings this proposed consumer class action on behalf of herself and all other citizens of California, who, from the applicable limitations period up to and including the present, purchased any of Defendant's Contaminated Cat Foods.

15.     Plaintiff brings this action individually and on behalf of all other similarly situated consumers within California who purchased Defendant's Contaminated Cat Foods, in order to: cause the disclosure of the presence of heavy metals and chemicals such as BPA; correct the false and misleading perception Defendant has created in the minds of consumers that the Contaminated Cat Foods possess the Quality Claims; and to obtain redress for those who have purchased the Contaminated Cat Foods.

## JURISDICTION AND VENUE

16.     This Court has original jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and more than two-thirds of the Class resides in a state other than the state in which Defendant is a citizen and in which this case is filed, and therefore any exemptions to jurisdiction under 28 U.S.C. §1332(d) do not apply.

17.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, because Plaintiff Watson resides and suffered injury as a result of Defendant's acts in this District, many of the acts and transactions giving rise to this action occurred in this District, Defendant conducts substantial business in this district, Defendant has intentionally availed itself of the laws and markets of this district, and Defendant is subject to personal jurisdiction in this District.

## PARTIES

18.     Plaintiff is, and at all times relevant hereto has been, a citizen of the state of California.  Plaintiff purchased the following Contaminated Cat Foods for her 11-year-old cats, Gray Kitty and Orange Kitty: Solid Gold Fit as a Fiddle with Alaskan Pollock. Plaintiff purchased a 12-pound bag of the Contaminated Cat Foods on average every four to six weeks between approximately May 2014 and January 2018, from Petco, PetSmart, and chewy.com.  Prior to purchasing the Contaminated Cat Foods, Plaintiff saw the product's nutritional claims on the packaging, which she relied on in deciding to purchase the Contaminated Cat Foods.  Plaintiff purchased the Contaminated Cat Foods because she wanted to provide her cats with quality, natural food.  Based on the false and misleading claims, warranties, representations, advertisements, and other marketing by Defendant, Plaintiff was unaware that the Contaminated Cat Foods contained any level of heavy metals, chemicals, or toxins.

19.     As the result of the Defendant's negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiff was injured when she paid the purchase price or a price premium for the Contaminated Cat Foods that did not deliver what Defendant promised.  She paid for the Contaminated Cat Foods on the assumption that their labeling was accurate and based on Defendant's representations that it was holistic, premium nutrition, superior quality and safe for consumption.   Plaintiff would not have paid this money had she known the Contaminated Cat Foods contained any levels of the heavy metals, chemicals, and/or toxins. Moreover, Plaintiff would not have purchased the Contaminated Cat Foods if she knew they included heavy metals and BPA. Plaintiff was further injured because the Contaminated Cat Foods have no or *de minimis* value based on

the presence of the alleged heavy metals, chemicals, and toxins. Damages can be calculated through expert testimony at trial. Further, should Plaintiff encounter the Contaminated Cat Foods in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising of the Contaminated Cat Foods.

20.    Defendant Solid Gold Pet, LLC is incorporated in Delaware. Its corporate headquarters and principal place of business, as of April 2018, is located in Chesterfield, Missouri.

21.    Defendant formulates, develops, manufactures, packages, labels, distributes, markets, advertises, and sells the Contaminated Cat Foods throughout the United States, including in California. The Marketing for the Contaminated Cat Foods, relied upon by Plaintiff, was overseen, created, allowed, and/or authorized by Defendant and their agents, and was disseminated by Defendant and their agents through Marketing that contained the misrepresentations alleged herein. The Marketing for the Contaminated Cat Foods was designed to encourage consumers to purchase the Contaminated Cat Foods and lead reasonable consumers, *i.e.*, Plaintiff and the Class, into purchasing the Contaminated Cat Foods. Defendant negligently, recklessly, and/or intentionally oversaw, created, allowed, and/or authorized the deceptive, misleading, unfair, and/or false Marketing for the Contaminated Cat Foods.

## FACTUAL ALLEGATIONS

**Defendant's Deceptive, Misleading, Unfair, and False Marketing of Its Contaminated Cat Foods**

22.     Defendant formulates, develops, manufactures, labels, packages, distributes, markets, advertises, and sells its extensive lines of dry and wet cat food products across the United States, including the Contaminated Cat Foods.

23.     The Contaminated Cat Foods are available at numerous retail and online outlets in the United States, including in the state of California.

24.     The Contaminated Cat Foods are widely marketed and advertised, and Defendant employs a Vice President of Marketing, Vice President of Ecommerce Sales, and Director of Brand and Digital Marketing.

25.     The Contaminated Cat Foods include the following:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(a) Solid Gold Grain Free Fit as a Fiddle Fresh Caught Alaskan Pollock

   Dry Cat Food



(b) Solid Gold Grain Free Indigo Moon Chicken and Egg Dry Cat Food



(c) Solid Gold Grain Free High Protein with Chicken Dry Cat Food



(d) Solid Gold Blended Tuna Recipe in Gravy Wet Cat Food



(e) Solid Gold Mackerel and Tuna Recipe in Gravy Wet Cat Food



(f) Solid Gold Sea Bream and Tuna Recipe in Gravy Wet Cat Food



26.    Defendant's Marketing campaign goes to great lengths to associate its pet food products, including the Contaminated Pet Foods, as being nutritious, healthy, holistic, high quality, and possessing stringent quality controls.

27.    For instance, Defendant states that its mission is to "provide dogs and cats with the best possible food, treats and wellness supplements that allow them to live a long, healthy life."

28.    Defendant further states that it is "holistic pet nutrition that's carefully formulated to unleash your pet's amazing nature" and uses "high-quality, purposeful ingredients."

29.    Defendant promotes its quality control standards by stating, "Regardless of sourcing, all of our ingredients undergo multiple checkpoints against key health and safety criteria as they are brought into our U.S. manufacturing facilities…."

30.    Further, Defendant's Marketing states its Contaminated Cat Foods are "holistic pet nutrition that's carefully formulated to unleash your pet's amazing nature" and "Always formulated for your pet's optimal nutrition [and] what goes into a Solid Gold food is just as important as what does not."

31.    In fact, Solid Gold includes a stamp on the front of its dry food packaging proclaiming itself the "Gold standard in holistic pet nutrition":



32.    The Defendant's official website displays the Contaminated Cat Foods, complete with descriptions and complete lists of ingredients.  Defendant's website also states its "Nutrition Philosophy" is "All that's good, nothing that's not" and further touts:

Powerful proteins. Vitamin-rich super foods. Balanced ingredients. For over 40 years, we've traveled the world in search of the most nutritious ingredients

- 11 -

on earth. The result: holistic pet nutrition that's carefully formulated to unleash your pet's amazing nature.

33.     The website proclaims "Superfoods for Super Pets" that "unlock your pet's healthiest self", and explains:

Solid Gold has over 40 years of experience developing transformative nutrition for your pet.  All of our balanced dry food recipes have 20 nutrient-dense superfoods and clean, high-quality proteins.  Our holistic recipes are designed to support your pet's overall health and wellbeing—including mind, body and spirit.

34.     Defendant claims to "always have your pet's health in mind."

35.     On Defendant's Facebook page, it describes itself as "America's first holistic pet food [with] more than 40 years of experience developing transformative nutrition for your pet."  Defendant also claims, "Solid Gold led the charge in creating premium nutrition for dogs and cats."

36.     Defendant's Marketing also continually emphasizes its supposed strict quality controls.  For instance, the Marketing for the Contaminated Cat Foods states they are made with "only high quality ingredients that pass strict quality control measures."  Defendant offered further assurances by representing that the ingredients utilized in the Contaminated Cat Foods had to pass "strict quality control measures" and went through "multiple checkpoints against key health and safety criteria."

37.     Defendant also assures its customers that it "oversees the manufacturing process of products from partnering with qualified ingredient suppliers, to receipt of high quality ingredients, recipe blending, and lab testing samples from each batch that is produced."

38.     Defendant specifically claims that its canned tuna products, including those listed in the Contaminated Cat Foods, also "meet our high quality and safety standards." Defendant further stated that it "perform[s] random sampling of our tuna products for mercury and have never had a positive result."

**Defendant Negligently, Recklessly, and/or Intentionally Omitted Any Mention of the Presence of BPA and Heavy Metals**

39.     Consumers such as Plaintiff are reasonably led to believe the Contaminated Cat Foods do not contain BPA, Heavy Metals, or any other potentially harmful substances based on Defendant's Quality Claims Marketing portraying the Contaminated Cat Foods as holistic, nutritious, healthy, high Quality, and possessing stringent quality controls.

40.     However, third-party testing has revealed that Defendant's Marketing Contaminated Cat Foods do in fact contain levels of BPA and Heavy Metals that are material to a reasonable consumer:

| Product Name | arsenic ug per kg | bpa ug per kg | cadmium ug per kg | mercury ug per kg | lead ug per kg |
|---|---|---|---|---|---|
| Solid Gold Grain Free Fit as a Fiddle Fresh Caught Alaskan Pollock Dry Cat Food | 402.30 | 151.60 | 49.80 | 6.30 | 76.50 |
| Solid Gold Grain Free Indigo Moon Chicken and Egg Dry Cat Food | 124.00 | 102.60 | 26.50 | 2.90 | 64.90 |
| Solid Gold Grain Free, High Protein With Chicken Dry Cat Food | 42.70 | 169.70 | 24.20 | 2.70 | 108.60 |
| Solid Gold Blended Tuna Recipe in Gravy Wet Cat Food | 1661.20 | 118.50 | 23.60 | 30.20 | 0.00 |

- 13 -

| Product Name | arsenic ug per kg | bpa ug per kg | cadmium ug per kg | mercury ug per kg | lead ug per kg |
|---|---|---|---|---|---|
| Solid Gold Mackerel and Tuna Recipe in Gravy Wet Cat Food | 1527.30 | 0.00 | 31.20 | 41.60 | 4.80 |
| Solid Gold Sea Bream and Tuna Recipe in Gravy Wet Cat Food | 1112.00 | 0.00 | 18.10 | 53.30 | 0.00 |

41.    Yet Defendant's Marketing does not state the Contaminated Cat Foods contain BPA or Heavy Metals anywhere.

42.    As a result of Defendant's deceptive, misleading, unfair, and false Marketing and omissions, a reasonable consumer would have no reason to suspect the presence of BPA or Heavy Metals in the Contaminated Cat Foods without conducting his or her own scientific tests, or reviewing third party scientific testing of these products.

43.    Based on Defendant's Quality Claims, it had a duty to ensure the Contaminated Cat Foods were as represented and not deceptively, misleadingly, unfairly, and falsely Marketed.

44.    Further, based on Defendant's supposed stringent quality controls and assurances, Defendant knew or should have known the Contaminated Cat Foods possessed BPA and Heavy Metals.   As such, Defendant acted negligently, recklessly, and/or intentionally with its deceptive, misleading, unfair, and false Marketing and omissions.

45.    Based on its deceptive, misleading, unfair, and false Marketing, Defendant charges a premium, knowing that the Quality Claims are something an average consumer would consider as a reason in picking a more expensive cat food.  Through Defendant's

deceptive, misleading, unfair, and false Marketing of the Contaminated Cat Foods as possessing the Quality Claims, it wrongfully capitalized on, and reaped enormous profits from, consumers' strong preference for pet food with such qualities.

**The Pet Food Industry, including Defendant, Knows that The Average Consumer Cares and Considers What They Are Feeding Their Pet**

46.    The Pet Food industry has been reporting on the Humanization of both pets and pet food for years.

47.    A recent survey done by a Pet Food giant showed that "95 percent [of pet owners] of agreed they saw their canine as part of the family." And 73 percent of them responded they would make sure their "pet gets food before they do."[2]

48.    But this is nothing new, as in 2017, a survey had reported the same results: "In the US, 95% of pet owners consider their pets to be part of the family—up 7 points from 2007, according to a survey by Harris Poll."[3]

49.    Indeed, based on this, it was reported that "there isn't much people won't do for their pets, and this sentiment has only strengthened over the past few years, especially for pet food. Pet food accounts for 76% of the pet care category, representing a significant opportunity for pet companies."[4]

---

[2] https://people.com/pets/study-women-prefer-dogs-to-partner/

[3] https://www.petfoodindustry.com/articles/5695-report---say-pets-are-part-of-the-family

[4] *Id.*

50.     And, pet owners want "pet food options that address the same health concerns currently influencing human food production, such as unnatural preservatives and genetically modified ingredients—and they're serious about these preferences."[5]

51.     "Treating pets like one of the family continues to be a popular trend among pet owners; however, today, their purchases are more and more functionally driven as health becomes a top priority"

52.     Defendant's Marketing uses this shift in paradigm of pet owners of humanization of pet food and viewing pets as family:  "Solid Gold is a group of animal lovers, explorers, and nutritionists who want to give their pets the best. Our pets give so much to us so we've made it our mission to return the favor by giving them what they deserve – premium, holistic, natural products that allow these amazing animals to look and feel great while they live life to the fullest."[6]

> "Our mission is to create the kind of nutrition that will change pets' lives in mind, body, and spirit. That's why, for over 40 years, we've scoured the earth looking for simple, natural ingredients that unleash the very best in your pet, which we call their "inner gold! We are interested in much more than just a healthy, natural diet – we strive to provide a way of life that allows each pet to fulfill their destiny, while looking and feeling great! There's nothing more satisfying than seeing your pet happy inside and out."

---

[5] "http://www.nielsen.com/us/en/insights/reports/2016/the-humanization-of-pet-food.html

[6] https://www.solidgoldpet.com/about/

53.    In fact, CEO and President Bob Rubin touts that "At Solid Gold we firmly believe pets are part of the family. And so we want to make sure we are offering pet parents the opportunity to give their pets great nutrition just like they want to give to their child…"[7]

**The Inclusion of Heavy Metals and/or BPA Is Material to a Reasonable Consumer Based on the Inherent and Known Risks of Consumption and/or Exposure**

54.    Consumption and/or Exposure to Heavy Metals and/or BPA carry known risks.

55.    For instance, based on the risks associated with exposure to higher levels of arsenic, both the U.S. Environmental Protection Agency ("EPA") and U.S. Food and Drug Administration ("FDA") have set limits concerning the allowable limit of arsenic at 10 parts per billion ("ppb") for human consumption in apple juice (regulated by the FDA) and drinking water (regulating by the EPA).  Moreover, the FDA is considering limiting the action level for arsenic in rice cereal for infants to 100 ppb.[8]

56.    Arsenic is deadly to cats in doses of just one to twelve milligrams per pound of body weight.   Additionally, drinking water with levels greater than 0.25ppm is considered potentially toxic, especially to large animals.

57.    Arsenic poisoning can be caused by acute and/or repeated exposure to the toxin over a long period of time.   Arsenic toxicity can affect the gastrointestinal and cardiovascular systems, as well as lead to circulatory collapse.

---

[7] https://www.solidgoldpet.com/interviews/

[8] FDA, Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level (Apr. 2016), https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocuments RegulatoryInformation/UCM493152.pdf.

58.     Lead is another carcinogen and toxin known to cause health problems. Exposure to lead in food can build up over time and has been scientifically demonstrated to lead to the development of chronic poisoning, cancer, developmental disorders, and affect normal cell metabolism as well as cause serious injuries to the central nervous and gastrointestinal systems.

59.     Mercury can cause damage to the kidneys and neurological, cardiovascular, and nervous systems in cats.  Exposure to mercury can also interfere with metabolic activity, leading to tissue necrosis and degeneration. Continued exposure to mercury can also injure the inner surfaces of the digestive tract and abdominal cavity.[9]

60.     Cadmium is extremely toxic and has toxic biological effects at concentrations smaller than almost any commonly found mineral.  Exposure to cadmium has been observed to cause anemia, liver disease, and nerve or brain damage in animals eating or drinking it.  The U.S. Department of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens and the EPA has likewise determined that cadmium is a probable human carcinogen.

61.     Finally, BPA, an industrial chemical that is an endocrine disruptor, has been linked to various health issues, including reproductive disorders, heart disease, diabetes, cancer, and neurological problems.  The dangers of BPA in human food are recognized by the FDA, as well as by the state of California.  For instance, manufacturers and wholesalers

---

[9] Defendant has specifically addressed concerns regarding the presence of mercury in its products, stating that it performs random testing of its tuna products for mercury and has "never had a positive result."

are prohibited from selling any children's products that contain BPA and any infant formula, baby food, or toddler food stored in containers with intentionally-added BPA.

62.    Based on the foregoing, reasonable consumers, like Plaintiff, would consider the mere inclusion of BPA and Heavy Metals in the Contaminated Cat Foods a material fact when considering what pet food to purchase.

63.    Despite the known risks of exposure to BPA and Heavy Metals, Defendant negligently, recklessly, and/or knowingly sold the Contaminated Cat Foods without disclosing they contain BPA or Heavy Metals.

64.    Despite the known risks of exposure to these heavy metals, Defendant has negligently, recklessly, and/or knowingly sold the Contaminated Cat Foods without disclosing they contain BPA or Heavy Metals to consumers like Plaintiff.

65.    Additionally, Defendant knew or should have been aware that a consumer would be feeding the Contaminated Cat Foods multiple times each day to his or her cat, making it the main, if not only, source of food. This leads to repeated exposure of the BPA or Heavy Metals to the cat.

66.    Defendant has wrongfully and misleadingly advertised and sold the Contaminated Cat Foods without any label or warning indicating to consumers that these products contain BPA or Heavy Metals, or that these toxins can accumulate over time in the cat's body to the point where poisoning, injury, and/or disease can occur.

67.    Defendant's omissions are material, false, misleading, and reasonably likely to deceive the public. This is true especially in light of the long-standing campaign by Defendant to market the Contaminated Cat Foods as holistic and natural in order to induce consumers, such as Plaintiff, to purchase the products. For instance, Defendant markets

the Contaminated Cat Foods as "holistic" and "premium nutrition," using "only the best quality ingredients on earth," both on the products' packaging and on Defendant's website.

68.     Defendant further states that it is "holistic pet nutrition that's carefully formulated to unleash your pet's amazing nature" and uses "high-quality, purposeful ingredients."

69.     Defendant promotes its quality control standards by stating, "Regardless of sourcing, all of our ingredients undergo multiple checkpoints against key health and safety criteria as they are brought into our U.S. manufacturing facilities…."

70.     Defendant has specifically addressed concerns regarding the presence of mercury in its products, stating that it performs random testing of its tuna products for mercury and has "never had a positive result."[10]

71.     The use of such representations, descriptions, and promises makes Defendant's marketing campaign deceptive based on the presence of heavy metals in the Contaminated Cat Foods. Reasonable consumers, like Plaintiff, would consider the mere inclusion of heavy metals in the Contaminated Cat Foods a material fact when considering what pet food to purchase.  Defendant's above-referenced statements, representations, partial disclosures, and omissions are false, misleading, and crafted to deceive the public as they create an image that the Contaminated Cat Foods are healthy, safe, and free of heavy metals such as arsenic, mercury, lead, and cadmium.

72.     Moreover, a reasonable consumer, such as Plaintiff and other members of the Class (as defined herein), would have no reason to not believe Defendant's claims that the

---

[10] https://www.solidgoldpet.com/faq/ (Last accessed April 18, 2018.)

Contaminated Cat Foods are holistic, premium nutrition, and made of "only the best quality ingredients."  Non-disclosure and/or concealment of the toxins in the Contaminated Cat Foods coupled with the misrepresentations alleged herein by Defendant promoting its food as "all that's good, nothing that's not" is intended to and does, in fact, cause consumers, like Plaintiff and the members of the class, to purchase a product they would not have bought if the true quality and ingredients were disclosed or pay a premium for such cat food.  As a result of these false or misleading statements and omissions, Defendant has generated substantial sales of the Contaminated Cat Foods.

**Plaintiff's Reliance Was Reasonable and Foreseen by Defendant**

73.    When making her purchasing decisions, Plaintiff reasonably relied on Defendant's misleading, deceptive, unfair, and false Quality Claims on the Marketing of the Contaminated Cat Foods.

74.    Any reasonable consumer would consider the Marketing of a product when deciding whether to purchase a product, such as the Quality Claims relied on by Plaintiff when purchasing the Contaminated Cat Foods.

75.    Defendant's Marketing campaign has been sufficiently lengthy in duration and widespread in dissemination that it would be unrealistic to require Plaintiff to plead reliance upon each advertised misrepresentation.

76.    The use of Defendant's Quality Claims makes its Marketing campaign deceptive, misleading, unfair, and false based on the presence of BPA and Heavy Metals in the Contaminated Cat Foods.   Defendant's above-referenced Marketing and omissions are crafted to deceive the public by creating an image that the Contaminated Cat Foods are

nutritious, healthy, high quality, possess stringent quality standards, and are free of BPA and Heavy Metals.

77.    Moreover, a reasonable consumer, such as Plaintiff and other members of the Class, would have no reason to not believe Defendant's Quality Claims.  Non-disclosure and/or concealment of the BPA and Heavy Metals in the Contaminated Cat Foods coupled with the deceptive, misleading, unfair, and false Marketing alleged herein by Defendant is intended to and does, in fact, cause consumers, like Plaintiff and the members of the class, to purchase a product they would not have bought if the true quality and ingredients were disclosed.

**Defendant's Knowledge and Notice of Its Breaches of Express and Implied Warranties**

78.    Defendant had sufficient notice of its breaches of express and implied warranties. Defendant has, and had, exclusive knowledge of the physical and chemical makeup of the Contaminated Cat Foods.

79.    Additionally, Defendant received notice and/or should have been aware of the contaminants in its cat food, including the Contaminated Cat Foods, through various news articles and media releases, which found levels of heavy metals and byproduct contaminants in Defendant's cat food products.

**Privity Exists with Plaintiff and the Proposed Class**

80.    Defendant knew that consumers such as Plaintiff and the Class would be the end purchasers of the Contaminated Cat Foods and the target of its advertising and statements.

81.   Defendant intended that its Marketing would be considered by the end purchasers of the Contaminated Cat Foods, including Plaintiff and the Class.

82.   Defendant directly marketed to Plaintiff and the Class through statements on their packaging, labeling, marketing, and advertising.

83.   Plaintiff and the proposed Class are the intended beneficiaries of the expressed and implied warranties.

## CLASS ACTION ALLEGATIONS

84.   Plaintiff brings this action individually and on behalf of the following Class pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

> All persons who are citizens of the State of California who, from August 1, 2013, to the present, purchased the Contaminated Cat Foods for household or business use, and not for resale (the "Class").

85.   Excluded from the Class are the Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice, or judicial officer presiding over this matter.

86.   This action is brought and may be properly maintained as a class action. There is a well-defined community of interests in this litigation and the members of the Class are easily ascertainable.

87.   The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the Class members in a single action will provide substantial benefits to the parties and Court.

88.   Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

(a) whether Defendant owed a duty of care to Plaintiff and the Class;

(b) whether Defendant knew or should have known that the Contaminated Cat Foods contained heavy metals and/or BPA;

(c) whether Defendant wrongfully represented and continues to represent that the Contaminated Cat Foods possess the Quality Claims;

(d) whether Defendant wrongfully failed to state that the Contaminated Cat Foods contained heavy metals and/or BPA;

(e) whether Defendant's Quality Claims on its Marketing are deceptive, misleading, unfair, and/or false;

(f) whether Defendant's Quality Claims are likely to deceive a reasonable consumer;

(g) whether a reasonable consumer would consider the presence of heavy metals and/or BPA as a material fact in purchasing pet food;

(h) whether Defendant knew or should have known its Quality Claims are deceptive, misleading, unfair, and/or false;

(i) whether Defendant continues to disseminate the Quality Claims despite knowledge that the Quality Claims are deceptive, misleading, unfair, and/or false;

(j) whether Defendant's wrongful conduct alleged herein was negligent, reckless, and/or intentional;

(k) whether a representation that a product does not contain arsenic and/or lead is material to a reasonable consumer;

(l) whether Defendant violated California law;

(m) whether Defendant breached their express warranties;

(n) whether Defendants breached their implied warranties;

(o) whether Defendants engaged in unfair trade practices;

(p) whether Defendants engaged in false advertising;

(q) whether Defendants made negligent, reckless, and false misrepresentations and omissions;

(r) whether Plaintiff and the members of the Class are entitled to actual, statutory, and punitive damages; and

(s)    whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief.

89.    Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff individually and on behalf of the other members of the Class.  Identical statutory violations and business practices and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

90.    Plaintiff's claims are typical of those of the members of the Class in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

91.    Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

92.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Class is small such that, absent representative litigation, it would be infeasible for members of the Class to redress the wrongs done to them.

93.    Questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class.

94.    As a result of the foregoing, class treatment is appropriate.

## CLAIMS FOR RELIEF

## COUNT I

**Violations of California's Consumer Legal Remedies Act, California Civil Code §§1750, *Et Seq.*, Against Defendants on Behalf of the Class**

95.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

96.    Plaintiff and each Class member is a "consumer," as that term is defined in California Civil Code section 1761(d).

97.    The Contaminated Cat Foods are "goods," as that term is defined in California Civil Code section 1761(a).

98.    Defendant is a "person" as that term is defined in California Civil Code section 1761(c).

99.    Plaintiff and each proposed Class member's purchase of Defendant's products constituted a "transaction," as that term is defined in California Civil Code section 1761(e).

100.    Defendant's conduct alleged herein violates the following provisions of California's Consumer Legal Remedies Act (the "CLRA"):

(a)    California Civil Code section 1770(a)(5), by negligently, recklessly, and/or intentionally representing the Contaminated Cat Foods with Healthy Claims and failing to disclose the presence of heavy metals and BPA in the Contaminated Cat Foods;

(b)    California Civil Code section 1770(a)(7), by negligently, recklessly, and/or intentionally representing that the Contaminated Cat Foods were of a particular standard, quality, or grade, when they were of another;

- 26 -

(c)      California Civil Code section 1770(a)(9), by negligently, recklessly, and/or intentionally advertising the Contaminated Cat Foods with intent not to sell them as advertised; and

(d)      California Civil Code section 1770(a)(16), by representing that the Contaminated Cat Foods have been supplied in accordance with previous representations when they have not.

101.    As a direct and proximate result of these violations, Plaintiff and the Class have been harmed, and that harm will continue unless Defendant is enjoined from using the misleading marketing, advertising, and labeling described herein in any manner in connection with the sale of the Contaminated Cat Foods.

102.    Plaintiff seeks an award of attorneys' fees pursuant to, inter alia, California Civil Code section 1780(e) and California Code of Civil Procedure section 1021.5.

## COUNT II

**Violations of California False Advertising Law, California Business & Professions Code §§17500, *Et Seq.*, Against Defendants on Behalf of the Class**

103.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

104.    California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading."  Cal. Bus. & Prof. Code §17500.

105.    Defendant's representations that the Contaminated Cat Foods possess the Quality Claims in conjunction with the products' containing undisclosed heavy metals and BPA, are untrue or misleading and likely to deceive the public.

106.    Defendant knew, or reasonably should have known, that all of the Quality Claims are untrue or misleading.

107.    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase these products in the future if she can be assured that the Contaminated Cat Foods are as advertised and do not contain such high levels heavy metals and BPA.

108.    Plaintiff and members of the Class are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Contaminated Cat Foods.

## COUNT III

**Violations of the Unfair Competition Law, California Business & Professions Code §§17200, *Et Seq.*, Against Defendants on Behalf of the California Class**

109.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

110.    The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code §17200.

**Fraudulent**

111.    Defendant's Quality Claims for the Contaminated Cat Foods are  literally false and likely to deceive the public, as is Defendant's failure to disclose the presence of heavy metals and BPA in the Contaminated Cat Foods.

**Unlawful**

112.    As alleged herein, Defendant has marketed, advertised, and labeled the Contaminated Cat Foods with deceptive, misleading, or false, such that Defendant's actions as alleged herein violate at least the following laws:

•    The CLRA, California Business & Professions Code sections 1750, *et seq.*; and

•    The False Advertising Law, California Business & Professions Code sections 17500, *et seq.*

**Unfair**

113.    Defendant's conduct with respect to the Marketing of the Contaminated Cat Foods is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

114.    Defendant's conduct with respect to the Marketing of the Contaminated Cat Foods is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law and the CLRA.

115.    Defendant's conduct with respect to the Marketing of the Contaminated Cat Foods is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers, themselves, can reasonably avoid.

116.    In accordance with California Business & Professions Code section 17203, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign.    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

117.    On behalf of herself and the Class, Plaintiff also seeks an order for the restitution of all monies from the sale the Contaminated Cat Foods, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## COUNT IV

**Breach of Express Warranty Against Defendant on Behalf of the Class**

118.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

119.    Defendant labeled, packaged, marketed, advertised, and sold its Contaminated Cat Foods into the stream of commerce with the intent that the Contaminated Cat Foods would be purchased by Plaintiff and the Class.

120.    Defendant expressly warranted to Plaintiff and the Class that their Contaminated Cat Foods possess the Quality Claims.

121.    Defendant made these express warranties regarding the Contaminated Cat Foods' quality and ingredients in writing through the Marketing.  These express warranties became part of the basis of the bargain Plaintiff and the Class entered into upon purchasing the Contaminated Cat Foods.

122.    Defendant's express warranties were made in connection with the sale of the Contaminated Cat Foods to Plaintiff and the Class.  Plaintiff and the Class relied on Defendant's express warranties when deciding whether to purchase the Contaminated Cat Foods.

123.    Defendant's Contaminated Cat Foods do not conform to Defendant's express warranties because they contain heavy metals and BPA.

124.    Defendant was on notice of its breach because it was aware that the Contaminated Cat Foods could or did contain heavy metals and BPA and had exclusive knowledge of the make-up of the Contaminated Cat Foods and the source of all its packaging and cans.

125.    Privity exists because Defendant expressly warranted to Plaintiff and the Class that the Contaminated Cat Foods possessed the Quality Claims.

126.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Contaminated Cat Food that is worth less than the price they paid and that they would have not have purchased at all had they known of the presence of heavy metals and BPA.

127.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to its express warranties and resulting breach.

**COUNT V**
**Breach of Implied Warranty of Merchantability Against**
**Defendant on Behalf of the Class**

128.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

129.    Defendant is a merchant engaging in the sale of goods to Plaintiff and the Class.

130.    There was a sale of goods from Defendant to Plaintiff and the members of the Class.

131.    At all times mentioned herein, Defendant manufactured or supplied the Contaminated Cat Foods.  Prior to the time the Contaminated Cat Foods were purchased by Plaintiff and the Class, Defendant impliedly warranted to them that the Contaminated Cat Foods conformed to the promises and affirmations of fact made on the Contaminated Cat Foods' containers and labels, including possessing the Quality Claims.

- 31 -

132.    Plaintiff and the Class relied on Defendant's promises and affirmations of fact when they purchased the Contaminated Cat Foods.

133.    The Contaminated Cat Foods did not conform to Defendant's affirmations of fact and promises, the Quality Claims, because they contained heavy metals and BPA at levels material to a reasonable consumer.

134.    Defendant breached its implied warranties by selling the Contaminated Cat Foods that contained heavy metals and BPA and therefore failed to conform to the promises or affirmations of fact made on their containers or labels.

135.    Defendant was on notice of this breach because it was aware the real risk for inclusion of heavy metals and BPA and had exclusive knowledge of the make-up of the Contaminated Cat Foods and the source of all its packaging and cans.

136.    Privity exists because Defendant impliedly warranted to Plaintiff and the Class through Marketing that the Contaminated Cat Foods possess the Quality Claims and by failing to disclose the presence of heavy metals and/or BPA.

137.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class suffered actual damages in that they purchased Contaminated Cat Food that is worth less than the price they paid and that they would have not have purchased at all had they known of the presence of heavy metals and/or BPA.

138.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to its implied warranties and resulting breach.

## COUNT VI
### Fraudulent Misrepresentation Against Defendant on Behalf of the Class

139.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

140.   Defendant made false representations to Plaintiff and the Class about the Contaminated Cat Foods with the Quality Claims.

141.   Defendant knew its representations about the Contaminated Cat Foods were false because it knew the Contaminated Cat Foods contained levels of heavy metals and BPA.

142.   Defendant intentionally and knowingly made these false misrepresentations to induce Plaintiff and the Class to purchase its Contaminated Cat Foods.

143.   Plaintiff and the Class did in fact rely on these misrepresentations and purchased the Contaminated Cat Foods to their detriment. Given the deceptive manner in which Defendant advertised, represented and otherwise promoted the Contaminated Cat Foods, Plaintiff and the Class' reliance on Defendant's misrepresentations was justifiable.

144.   As a direct and proximate result of Defendant's conduct, Plaintiff and the Class suffered actual damages by purchasing Contaminated Cat Food that is worth less than the price they paid and that they would have not have purchased at all had they known of the presence of heavy metals and BPA.

145.   Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT VII

### Fraud by Omission Against Defendant on Behalf of the Class

146.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

147.    Defendant concealed from and failed to disclose to Plaintiff and the Class that its Contaminated Cat Foods contained heavy metals and BPA.

148.    Defendant was under a duty to disclose to Plaintiff and members of the Class the true quality, characteristics, ingredients and suitability of the Contaminated Cat Foods because: (1) Defendant was in a superior position to know the true state of facts about their Contaminated Cat Foods; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of the Contaminated Cat Foods; and (3) Defendant knew that Plaintiff and the Class could not reasonably have been expected to learn or discover that the Contaminated Cat Foods were misrepresented in their Marketing prior to purchasing the products.

149.    The facts concealed or not disclosed by Defendant to Plaintiff and the Class are material because a reasonable consumer would consider the facts to be important in deciding whether to purchase the Contaminated Cat Foods.

150.    Plaintiff and the Class justifiably relied on Defendant's omissions to their detriment.  Such detriment is evident from the true quality, characteristics, and ingredients of the Contaminated Cat Foods, which is inferior than advertised and represented by Defendant.

151.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class suffered actual damages in that they purchased Contaminated Cat Food that is worth

less than the price they paid and that they would have not have purchased at all had they known of the presence of heavy metals and BPA.

152.   Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## COUNT VIII

### Negligent Misrepresentation Against Defendant on Behalf of the Class

153.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

154.   Defendant had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the Marketing of the Contaminated Cat Foods.

155.   Defendant breached its duty to Plaintiff and the Class by Marketing products to Plaintiff and the Class that did not have the ingredients, qualities, and characteristics that Defendant represented and by failing to promptly remove the Contaminated Cat Foods from the marketplace or to take other appropriate remedial action.

156.   Defendant knew or should have known that the ingredients, qualities, and characteristics of the Contaminated Cat Foods were not as advertised. Specifically, Defendant knew or should have known that the Contaminated Cat Foods did not possess the Quality Claims because they contained levels of heavy metals and BPA.

157.   As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Contaminated Cat Food that is worth less than the price they paid and that they would have not have purchased at all had they known of the presence of heavy metals and BPA.

158.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for judgment against the Defendant as to each and every count, including:

A.    An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

B.    An order enjoining Defendant from selling the Contaminated Cat Foods until the levels of heavy metals and BPA are removed or full disclosure of the presence of such appear on Marketing;

C.    An order enjoining Defendant from selling the Contaminated Cat Foods in any manner containing, suggesting, or implying the Quality Claims;

D.    An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing products;

E.    An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

F.    An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or

fraudulent business act or practice, untrue or misleading advertising, or a violation of California law, plus pre- and post-judgment interest thereon;

G.    An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.    An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein;

I.    An order requiring Defendant to pay punitive damages on any count so allowable;

J.    An order awarding attorneys' fees and costs, including the costs of pre-suit investigation, to Plaintiff and the Class; and

K.    An order providing for all other such equitable relief as may be just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: July 27, 2018                          LOCKRIDGE GRINDAL NAUEN P.L.L.P.
                                              ROBERT K. SHELQUIST
                                              REBECCA A. PETERSON (241858)


                                              */s Rebecca Peterson*
                                              REBECCA A. PETERSON

                                              100 Washington Avenue South, Suite 2200
                                              Minneapolis, MN 55401
                                              Telephone: (612) 339-6900
                                              Facsimile: (612) 339-0981
                                              E-mail: rkshelquist@locklaw.com
                                                        rapeterson@locklaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS ARROYO LLP
KEVIN A. SEELY (199982)
STEVEN M. MCKANY (271405)
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail:   kseely@robbinsarroyo.com
               smckany@robbinsarroyo.com


CUNEO GILBERT & LADUCA, LLP
CHARLES LADUCA
KATHERINE VAN DYCK
4725 Wisconsin Ave NW, Suite 200
Washington, DC 20016
Telephone: 202-789-3960
Facsimile: 202-789-1813
E-mail: kvandyck@cuneolaw.com
charles@cuneolaw.com


LITE DEPALMA GREENBERG, LLC
JOSEPH DEPALMA
SUSANA CRUZ HODGE
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone:  (973) 623-3000
E-mail:   jdepalma@litedepalma.com
               scruzhodge@litedepalma.com

STEPHENS & STEPHENS LLP
CONRAD B. STEPHENS
505 S. McClelland St.
Santa Maria, CA 93454
Telephone: (805) 922-1951
Email: conrad@stephensfirm.com

Attorneys for Plaintiffs